**SCOTT E. BRADFORD, OSB #062824**
United States Attorney
District of Oregon
**JOSHUA KELLER, NYSB #4297396**
**CHELSEA WEIN, CASB #353557**
**CHARLES D. AGOOS, NYSB #5227269**
Assistant United States Attorneys
Joshua.Keller@usdoj.gov
Chelsea.Wein@usdoj.gov
Charles.Agoos@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2936
Telephone: (503) 727-1000
Attorneys for Defendant

**UNITED STATES DISTRICT COURT**

**THE DISTRICT OF OREGON**

| | |
|---|---|
| **LENA ARISTON,**<br><br>Plaintiff,<br><br>v.<br><br>**DAVID STEINER, Postmaster General of the United States,**<br><br>Defendant. | Case No. 3:21-cv-01669-AB<br><br>**DEFENDANT'S MOTIONS *IN LIMINE*** |

## DEFENDANT'S MOTIONS IN LIMINE

Pursuant to this Court's order, ECF 134, Defendant files the following motions *in limine*, about which the parties conferred pursuant to LR 7-1. Plaintiff opposes the motions.

## INTRODUCTION

Only three claims remain for resolution at trial: (1) whether Plaintiff's 2018 non-selection for Salem Postmaster was discriminatory; (2) whether Plaintiff's 2018 non-selection for MPOO Area 4 was discriminatory; and (3) whether, after Plaintiff filed an EEO complaint in 2018, there were instances of her supervisor being rude or domineering that constitute unlawful retaliation.

1. **Motion to Preclude Plaintiff from Litigating Dismissed Claims**

Plaintiff's hostile work environment and constructive discharge claims have been dismissed with prejudice. ECF 41 at 20 (ruling that Plaintiff's Second Amended Complaint did "not plausibly suggest that the workplace was permeated with racial, sexual, or ageist conduct sufficiently severe or pervasive to create a hostile work environment" and dismissing all of Plaintiff's hostile work environment and constructive discharge claims with prejudice); ECF 50 (adopting Magistrate's Findings and Recommendations in full).

After the close of discovery, Plaintiff filed a motion for clarification: "Plaintiff believes that the constructive discharge claim in regard to discrimination and retaliation continue to exist." ECF 100 at 2; *see also* ECF 99 (denying Plaintiff's motion to extend discovery). In the motion, Counsel for Plaintiff cited seven judicial opinions in an apparent attempt to develop a novel legal theory for why he should be able to litigate a constructive discharge claim notwithstanding the prior dismissals with prejudice of all hostile work environment and constructive discharge claims. ECF 100 (citing *Johns v. Brennan*, 761 F. Appx. 742 (9th Cir. 2019); *Steele v. Youthful Offender Parole Bd.*, 162 Cal. App. 4th 1241 (2008); *Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000); *Kincheloe v. Am. Airlines*, No. 22-15726, 2023 WL 3299989 (9th Cir. May 8, 2023); *Wheeler v. Home Depot USA*, 794 F. App'x 617 (9th Cir. 2019);

*Kasbarian v. Equinox Holdings*, 739 F. App'x 397 (9th Cir. 2018); and *Tichenor v. BAE Sys. Tech. Sols. & Servs.*, No. 22-55953, 2023 WL 8797508 (9th Cir. Dec. 20, 2023)).

None of the cases Plaintiff cited in the motion stand for the proposition that a plaintiff can pursue a constructive discharge claim when the factual circumstances are legally insufficient to establish a hostile work environment. In fact, the only published federal precedent cited by Plaintiff in the motion states the opposite: “Where a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge: conditions so intolerable that a reasonable person would leave the job.” *Brooks*, 229 F.3d at 930; *see also Pennsylvania State Police v. Suders*, 542 U.S. 129, 149 (2004) (“Creation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case.”). A constructive discharge claim is an aggravated form of a hostile work environment resulting in the plaintiff’s resignation. If severe or pervasive harassment sufficient to establish a hostile work environment does not exist, then there has necessarily been no constructive discharge.

In a minute order ruling on Plaintiff’s motion for clarification, the Court clarified that the constructive discharge and hostile work environment claims, which had been dismissed with prejudice, were “no longer at issue in this proceeding.” ECF 102. Nonetheless, Plaintiff is attempting to not only pursue a constructive discharge claim of liability and damages at trial but also to litigate hostile work environment theories of legal liability. ECF 136-138.

As a general rule, Title VII disparate treatment claims only concern concrete employment actions. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 357 (2024) (“Each kind of prohibited discrimination occurs by way of an employment action—whether pertaining to hiring, or firing, or compensating, or (as here) altering terms or conditions through a transfer.”). Hostile work

environment claims are the exception to that rule: "There are two major types of discrimination a plaintiff can allege under [Title VII]: discrete discriminatory acts and hostile work environment claims. Stated briefly, a discrete-act claim asserts that a specific employment decision (*e.g.*, discharge, forced resignation, or denial of tenure) violates Title VII. In contrast, a hostile-environment claim asserts that a series of smaller actions—including ones that would not violate Title VII if analyzed discretely—add up to create an environment that is itself a deprivation of the terms, conditions, or privileges of employment." *Russell v. Driscoll*, 157 F.4th 1348, 1350-51 (10th Cir. 2025) (internal marks and citations omitted).

Plaintiff's only surviving allegations that could constitute discrete adverse actions for her disparate treatment claim are the two 2018 non-selections, one of which was a lateral and the other of which was a downgrade. *Cf. Muldrow*, 601 U.S. at 354-55 ("To make out a Title VII discrimination claim, a transferee must show some harm respecting an identifiable term or condition of employment."). The constructive discharge claim has been dismissed, and Plaintiff's allegations about sabotage, surveillance, micromanagement, humiliation, and delayed leave approvals involve the type of conduct that is not actionable under Title VII unless it is severe and pervasive enough to alter the terms and conditions of employment such that a hostile work environment exists. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986); *see also Roylston v. City of Scottsdale*, No. 24-6530, 2025 WL 3110639, at *1 (9th Cir. Nov. 6, 2025) (humiliation and loss of remote work not adverse actions); *Lau v. Mullin*, No. 25-1937, 2026 WL 2414545, at *2 (9th Cir. June 26, 2026) (requests for medical documentation, scheduling adjustments, administrative mistakes in processing forms, requirement to return to work not adverse actions). Here, the Court has already dismissed the hostile work environment claim with prejudice.

This Court should order Plaintiff *in limine* to comply with prior Court orders in this case and to stop bringing claims for constructive discharge and hostile work environment, both of which have already been dismissed. *Compare Serritella v. Markum*, 119 F.3d 506, 512-13 (7th Cir. 1997) (affirming Rule 11 sanctions against counsel who continued to raise claims after they had been dismissed); *and Owens v. Fleet Car Lease*, No. 09-cv-0967-MJR, 2010 WL 2542028, at *4 (S.D. Ill. June 18, 2010) (issuing Rule 11 sanctions and finding that the continued pursuit of dismissed claims "served no purpose but to harass [the opposing party], cause unnecessary delay, increase the cost of litigation and waste the Court's time"); *with BEG Investments v. Alberti*, 85 F.Supp.3d 13, 51 (D.D.C. 2015) ("But unlike the attorney in *Serritella*, Plaintiff's counsel had not previously been warned by this Court that such conduct was sanctionable.").

**2. <u>Motion to Preclude Plaintiff from Litigating Unexhausted Claims</u>**

"A Title VII plaintiff must exhaust his or her administrative remedies before seeking judicial relief from discriminatory agency action." *Ong v. Cleland*, 642 F.2d 316, 318 (9th Cir. 1981). Here, Plaintiff's first formal EEO Complaint, filed January 14, 2019, raised ten issues:

1. On May 30, 2018, you were denied a lateral to the Salem Postmaster position;
2. On June 29, 2018, after interviewing for the Salem Postmaster position, you were not selected;
3. On September 8, 2018, after interviewing for the MPOO Area 4 position, you were not selected for a downgrade from an EAS-24 to an EAS-23 position;
4. On September 8, 2018, you were required to work the District Career Awareness Conference;
5. On an ongoing basis, your MPOO forced you to run his telecom in his absence;
6. In September 2018, you were pulled from an opportunity to go to Las Vegas to serve on the Western Area Rout examiner team;
7. On September 25, 2018, you were excluded from attending a meeting with senior management from Western Area;
8. On November 16, 2018, you were not invited to meet with the Postmaster General;
9. Since October 2018, your MPOO has been obstructive in the interviewing and selection process for your two vacant manager positions; and

10. On an ongoing basis, the MPOO has been verbally abusive towards you, undermines your authority as a higher level manager and micro manages your operations.

Wein Decl. ¶ 2, Ex. A. In addition, Plaintiff later filed a second formal EEO Complaint, on April 30, 2020, raising six issues. On June 19, 2020 and July 13, 2020, Plaintiff amended her second EEO Complaint to raise four additional issues, for a total of ten issues:

1. In December 2019, during peak season, the Manager of Post Office Operations (MPOO) interfered with the management of Southside Station and then blamed you and your staff for service failures;
2. On December 14, 2019, the MPOO berated you on the phone and questioned you;
3. On an ongoing basis, the MPOO controls your daily activities and orders where you will work;
4. On December 17, 2019, you were accused of refusing to answer questions on a telecom and subsequently given an Investigative Interview on December 19, 2019;
5. On December 18, 2019, the MPOO directed a peer to report to Southgate to school you on your operation; and
6. On February 21, 2020, your request for a non-competitive lateral to the position of Postmaster of Salem was denied.
7. On May 29, 2020, your detail as Plant Manager in Medford was terminated early and without notice, and you were instructed to return to your Postmaster position where you would report to the same MPOO that you had filed harassment charges against;
8. Since May 29, 2020, and continuing, management has refused to provide you with results of the investigation into your harassment complaint against your MPOO;
9. From June 9 – 12, 2020, you were charged LWOP rather than the FMLA-protected sick leave that you requested;
10. On June 22 – 26, 2020, you requested FMLA-protected sick leave but were paid work hours.

Wein Decl. ¶ 3, Exs. B, C. Plaintiff is limited to raising only those claims that were properly exhausted. *See Lopez v. Produce Exchange*, 171 F. App'x 11, 12 (9th Cir. 2006) (exhaustion defense preserved if asserted in Answer); ECF 54 at 116, ¶ 7. In her proposed legal standards, Plaintiff raises several claims that were not administratively exhausted, including allegations related to the denial of relocation assistance, surveillance, assignment to the Southside work location rather than Main Office, and supervision duties being taken away. ECF 136 at 9-10. In

her statement of facts, Plaintiff also gestures toward claims about her non-selections for positions outside of Oregon. ECF 17 at 19. These claims were not properly raised in Plaintiff's formal EEO Complaint. This Court should order *in limine* that Plaintiff is precluded from litigating claims at trial that were not administratively exhausted.

3. **Motion to Exclude Testimony and Evidence that is Irrelevant, Cumulative, Hearsay, or for which Deposition Designations are an Adequate Substitute;**

Plaintiff has identified thousands of pages of trial exhibits (3,123 pages) and dozens of trial witnesses (26) that have no apparent legitimate purpose. Because of the quantity of material proposed by Plaintiff, Defendant moves *in limine* to exclude particular categories of evidence. **First**, this Court should exclude evidence that is not **relevant** to the disputed facts of the claims to be presented at trial. For example, Plaintiff's economics expert should be excluded because the constructive discharge claim has been dismissed. Additionally, USPS EEO officers should be excluded because Defendant is not disputing that her administrative EEO complaints constituted protected activity.[1] **Second**, this Court should exclude **hearsay** evidence. Most of the disputed witnesses identified by Plaintiff do not have personal knowledge of the allegations underlying the claims to be decided at trial. For example, a substantial subset of Plaintiff's proposed witnesses are individuals with whom Plaintiff conferred about her allegations against Defendant. Plaintiff seemingly intends to have these witnesses testify about what Plaintiff told them as corroboration of her allegations. At most, Plaintiff could argue this testimony is marginally probative of the subjective element of a hostile work environment claim. *Harris v. Forklift Systems*, 510 U.S 17, 21-22 (1993) ("[I]f the victim does not subjectively perceive the

[1] Defendant has also offered to designate its EEO officers' deposition testimony about USPS's EEO complaint process in lieu of trial testimony, even though the facts are not disputed.

environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.”). Here, however, the hostile work environment claim has been dismissed. Additionally, many of the thousands of pages of trial exhibits proposed by Plaintiff contain nothing more than hearsay. **Third**, this Court should exclude **propensity/character** evidence. FRE 404.[2] It appears that Plaintiff intends for her trial to devolve into a series of side trials of Mr. Spina-Denson in which his former subordinates air their grievances against him. This evidence is not admissible. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2004) (“individuals are similarly situated when they have similar jobs and display similar conduct”); *accord Hubert v. Equinox Holdings*, No. 22-55363, 2023 WL 2134386, at *1 (9th Cir. Feb. 21, 2023); *Moore v. Donahoe*, 460 F. App'x 661, 663 (9th Cir. 2011). **Fourth**, this Court should exclude **opinion** evidence about Mr. Spina-Denson’s likeability or whether Mr. Spina-Denson discriminated or retaliated against Plaintiff. FRE 701. The opinion testimony that Plaintiff intends to elicit appears to be almost exclusively based on matters outside the witnesses’ personal knowledge. **Fifth**, even if Plaintiff narrows the scope of exhibits and testimony to be presented at trial, this Court should nonetheless exclude evidence that is **cumulative** or for which deposition testimony would be an adequate substitute.

**4. <u>Motion to Exclude Testimony and Evidence that was not Properly Disclosed during Discovery and/or For Violations of this Court’s Scheduling Orders</u>**

FRCP 37(c)(1) provides: “If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to

[2] Defendant has listed Trish Adams as a proposed witness to testify regarding Mr. Spina-Denson’s management style in anticipation of Plaintiff’s effort to expend a significant portion of time litigating Mr. Spina-Denson’s likeability. If the court limits the scope of the trial to evidence concerning the Plaintiff, Defendant agrees that Ms. Adams’s testimony would not be necessary.

supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Here, Plaintiff has identified approximately 922 pages of trial exhibits that were not produced during discovery and approximately 14 trial witnesses who were not identified during discovery. Plaintiff's list of 30 proposed trial witnesses and 3,123 pages of trial exhibits does not identify the admissible purposes of the evidence. After counsel for Plaintiff produced the list on October 23, 2026, counsel for Defendant requested that concise summaries and admissible purposes for the witnesses be provided that are factual and witness specific. For more than half of the witnesses, counsel for Plaintiff has proffered: "Will discuss her first hand knowledge of how Spina Denson discriminated against and retaliated against Ariston. Evidence is relevant and not prejudicial." Sometimes, counsel for Plaintiff added: "Evidence will show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, and lack of accident." All of the new documents and disputed witnesses should be excluded.

The failure to disclose these witnesses and documents during discovery was prejudicial because Defendant was not able to pursue discovery about the witnesses and documents. Counsel for Plaintiff has indicated to Counsel for Defendant that he believes that, at least with respect to a narrow subset of undisclosed documents, late disclosure is substantially justified because the documents were attachments to emails within Plaintiff's USPS email inbox. Generally, these are documents like handwritten notes by Plaintiff's union representative that were emailed as an attachment to Plaintiff by an external address without anything in the subject line or body that would indicate that it was related to this litigation. This is not a substantial justification. These documents were known to Plaintiff and could have been disclosed during discovery. The parties fully litigated the search terms Defendant used to produce ESI. ECF 65-73. Those search terms did not yield the documents that Plaintiff now seeks to present at trial.

In addition, Plaintiff has identified Sheryl Wakeling Cook as a damages witness. To the extent that Ms. Cook testifies to any matters beyond her personal knowledge, FRE 602, or based on specialized knowledge, FRE 703, her testimony must be excluded under FRCP 26(a)(2)(C). Even assuming Ms. Cook is the type of expert witness for which a report is not necessary, no summary expert disclosure was produced to Defendant during discovery.

Finally, this Court should order *in limine* the exclusion of all disputed witnesses proffered by Plaintiff for failure to comply with court orders. For disputed witnesses, this Court ordered the party proposing the witness to identify the admissible purposes and subjects of the testimony so that the opposing party could provide particularized objections to which the proposing party could respond. ECF 134. Plaintiff has proposed cut-and-paste legal conclusions for over a dozen witnesses such that Defendant is not able to provide particularized objections for this Court.

The purpose of this Court's Trial Management Order was for the parties to narrow the issues and evidence down before trial. Instead, Plaintiff has undermined that process by dumping thousands of pages of documents and dozens of witnesses on the Defendant and the Court without identifying her specific theories of liability or how particular evidence relates to disputed facts relevant to those theories of liability. Plaintiff has not identified any specific disputed facts to which her proposed evidence relates. This Court should order *in limine* the exclusion of evidence, witnesses, and exhibits that Plaintiff has failed to identify in compliance with the Federal Rules of Civil Procedure or this Court's Trial Management Order in order to prevent a trial by ambush.

5. **<u>Motion to Exclude Legally Insufficient Theories of Retaliatory Adverse Action</u>**

Plaintiff has identified eleven theories of retaliation. ECF 136, at 9-10: (1) Denied Relocation assistance; (2) Denied lateral and demotion opportunities; (3) Constructively

discharged; (4) Had job sabotaged; (5) Surveilled; (6) Job duties taken away; (7) Supervision duties taken away; (8) Hiring responsibilities taken away; (9) Reduced job opportunities; (10) Humiliated and disrespected every day for three years; and (11) Denied sick pay. Notably, at least the first two theories occurred before Plaintiff's protected activity. Additionally, by Plaintiff's own admission, much of the remaining alleged conduct was constant throughout Mr. Spina-Denson's supervision of Plaintiff, both before and after her protected activity.

Many of these theories are legally insufficient on their face. "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington Northern v. White*, 548 U.S. 53, 68 (2006). For example, the Ninth Circuit has held that delays in the processing of sick leave, even if proven true, would not "deter a reasonable employee from pursuing a charge of discrimination." *Brown v. Brennan*, No. 21-16154, 2024 WL 177328, at *1 (9th Cir Jan. 17, 2024). "Mere ostracism in the workplace is not grounds for a retaliation claim." *See Manatt v. Bank of America*, 339 F.3d 792, 803 (9th Cir. 2003) (supervisor staring angrily and co-workers being mean is legally insufficient). Reprimands and criticism that do not result in discipline are not material adverse actions for a retaliation claim. *Rios v. Centerra Group*, 106 F.4th 101, 120 (1st Cir. 2024); *Arnold v. United Airlines*, 142 F.4th 460, 476 (7th Cir. 2025). Changes in responsibilities and assignments are not material adverse actions unless the change is "objectively less desirable." *Brown*, 2024 WL 177328, at *1; *Passatino v. Johnson & Johnson*, 212 F.3d 493, 506 (9th Cir. 2000) (Plaintiff showed that changes in duties resulted in missed promotions). The case law is clear that retaliation claims cannot be based on alleged actions that are "too trivial." *See Reynaga v. Rosenberg Forest Products*, 847 F.3d 678, 694 (9th Cir. 2017) (affirming that four instances of inferior work assignments were legally insufficient to constitute

a material adverse action for a retaliation claim); *Xu v. LightSmyth Technologies*, No. 6:20-cv-01201, 2025 WL 2770511, at *8-9 (D. Or. Sept. 25, 2025). These precedents inform how this Court should treat Plaintiff's retaliation claim.

As far as Defendant can tell, there are three claims that Plaintiff may attempt to litigate as instances of retaliation. First, beginning before Mr. Spina-Denson learned of Plaintiff's protected activity, but continuing into the months afterward, the two collaborated on hiring two managers to serve under Plaintiff's chain of command. *See* Wein Decl. ¶ 4, Ex. D at USA_000864-868, ¶¶ 223-239. Eventually, Ms. Westlake, a white female, and Mr. Barabin, a black male, were selected for the positions. *Id.* at USA_000866-867, ¶ 232. Plaintiff claims that she did not actually want to select Mr. Barabin and that Mr. Spina-Denson pressured her to select Mr. Barabin in retaliation for her administrative EEO complaint. *Id.* at USA_000865, ¶ 225. This theory of retaliation is legally insufficient because the selection of Mr. Barabin was not an adverse employment action against Plaintiff.

Second, during peak holiday season 2018, Mr. Spina-Denson instructed Plaintiff about how to allocate human resources to deliver Christmas mail. When an auditor arrived unannounced at her post office, Plaintiff spoke negatively about Mr. Spina-Denson and identified several problems that she blamed on Mr. Spina-Denson. Wein Decl. ¶ 5, Ex. E at USA_000237, ¶ 38. Mr. Spina-Denson and Plaintiff dispute the accuracy of what Plaintiff told the auditor. Before Mr. Spina-Denson could find out about what Plaintiff had said, she left the post office and went out on a rural route without cell phone service to personally deliver mail so that she was not available when Mr. Spina-Denson called her about the report from the auditor. *Id.* When Mr. Spina-Denson finally reached Plaintiff, he chided her for being out of contact during peak Christmas season. *Id.* at USA_000320-321, ¶ 34. Plaintiff accused him of a raised tone, hung up

on him, and refused to speak to him. *Id.* Plaintiff reported the phone call as an act of harassment by Mr. Sina-Denson. Mr. Spina-Denson reported the phone call as an act of misconduct by Plaintiff. *Id.* The subsequent misconduct investigation did not result in discipline against Plaintiff, *Id.* at USA_000324-325, ¶¶ 52-53, and the subsequent harassment investigation did not result in discipline against Mr. Spina-Denson. For the reasons described above, this theory of retaliation also fails.

Third, several weeks later, on a telecom with Postmasters, each of the Postmasters except Plaintiff provided status reports. Plaintiff refused to give a status report when asked and asked to speak offline. *Id.* at USA_000324, ¶¶ 50-51. Mr. Spina-Denson insisted that Plaintiff give the status report. *Id.* Again, the case law identified above demonstrates that such facts, even if proven, are legally insufficient to establish liability under a retaliation theory.

This Court should order *in limine* that Plaintiff identify the specific conduct that she claims is retaliatory and exclude those theories that fail as a matter of law.

**6. Motion to Dismiss ADEA Claim for Lack of Jurisdiction**

Unlike Title VII, the ADEA does not provide for non-economic damages. *Villescas v. Abraham*, 311 F.3d 1253 (10th Cir. 2002). Here, none of Plaintiff's claims resulted in economic damages. Plaintiff's constructive discharge claim was dismissed. ECFs 41, 50. Both of the 2018 non-selections about which Plaintiff complains involved positions with equal or lesser salary. ECF 138 (seeking economic damages only for the constructive discharge claim that has been dismissed). As a result, even if Plaintiff could prove that her age motivated the employment actions alleged in this case, there would be no economic recovery against the Defendant.[3] Under

[3] In addition, Plaintiff's ADEA claims were previously dismissed without prejudice because the circumstances underlying the claims did not give rise to an inference of age discrimination. *See*

these circumstances, this Court lacks jurisdiction under Article III of the Constitution. *See Seed v. EPA*, 100 F.4th 257 (D.C. Cir. 2024) (dismissing the Plaintiff's ADEA claim for lack of standing where Plaintiff's transfer did not reduce her salary, her constructive discharge claim had been dismissed under Rule 12(b)(6), and she had no plans to return to working for the employer). The ADEA does not provide any remedy that is likely to redress the Plaintiff's alleged injuries in this case. Here, a judgment of liability for Plaintiff under the ADEA would constitute an advisory opinion. This Court should issue an order *in limine* dismissing Plaintiff's ADEA claim for lack of jurisdiction.

DATED this 27th day of October 2026.

SCOTT E. BRADFORD
United States Attorney
District of Oregon

*/s/ Joshua Keller*
JOSHUA KELLER
Assistant United States Attorney

*/s/ Chelsea Wein*
CHELSEA WEIN
Assistant United States Attorney

*/s/ Charles D. Agoos*
CHARLES D. AGOOS
Assistant United States Attorney

*Attorneys for Defendant*

---

ECF 41 at 11-12 (citing *Diaz v. Eagle Produce*, 521 F.3d 1201 (9th Cir. 2008)). Nothing about those circumstances has changed between that prior ruling and now.